## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District | District of Utah (Central) |
|---|---|---|
| Name (under which you were convicted):<br>Alan Eduardo Chavarin | | Docket or Case No.:<br>2:16-cr-00609-DB-1 |
| Place of Confinement:<br>FCI Safford | | Prisoner No.:<br>24900-081 |
| UNITED STATES OF AMERICA<br><br>v. | Movant (include name under which you were convicted)<br>ALAN EDUARDO CHAVARIN | |

### MOTION

FILED US District Court-UT
AUG 28 '20 PM 03:54

1. (a) Name and location of court that entered the judgment of conviction you are challenging:

   U.S. District Court
   District of Utah
   Central Division

   (b) Criminal docket or case number (if you know):  2:16-cr-00609-DB-1

2. (a) Date of the judgment of conviction (if you know):  1/5/2018

   (b) Date of sentencing:  1/4/2018

3. Length of sentence:  188 Months

4. Nature of crime (all counts):

   Count 1: Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1).

5. (a) What was your plea? (Check one)

   (1)  Not guilty ☑        (2)  Guilty ☐        (3)  Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)        Jury ☑        Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?   Yes ☑   No ☐

8. Did you appeal from the judgment of conviction?   Yes ☑   No ☐

9. If you did appeal, answer the following:

   (a) Name of court:   United States Court of Appeals for the Tenth Circuit

   (b) Docket or case number (if you know):   No. 18-4011

   (c) Result:   Affirmed

   (d) Date of result (if you know):   4/20/2020

   (e) Citation to the case (if you know):   United States v. Chavarin, No. 18-4011 (10th Cir. 2020)

   (f) Grounds raised:

   Chavarin argued that the court erred by failing to (i) specifically identify the perjurious statements, or (ii) determine that those statements satisfied all of the elements of perjury.

   (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☑

     If "Yes," answer the following:

     (1) Docket or case number (if you know):

     (2) Result:

     (3) Date of result (if you know):

     (4) Citation to the case (if you know):

     (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

     Yes ☐   No ☑

11. If your answer to Question 10 was "Yes," give the following information:

   (a) (1) Name of court:

      (2) Docket or case number (if you know):

      (3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ❑   No ❑

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?   Yes ❑   No ❑

(7) Result:

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:   Yes ❑   No ❑

(2)  Second petition:   Yes ❑   No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the <u>facts</u> supporting each ground.

**GROUND ONE:**

Ineffective Assistance of Pretrial Counsel

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Pretrial counsel's failure to:
(1) Communicate with Chavarin and provide information to him that he needed to assess the government's case-in-chief, including discovery and other evidence in order for him to make an informed decision as to whether to proceed to trial or plead guilty;
(2) Conduct an adequate and independent pretrial investigation including interviewing any defense or government witnesses on behalf of Chavarin; and
(3) Attempt to negotiate a reasonable plea agreement with the government deprived Chavarin of effective assistance of counsel during the pretrial phase of the proceedings.

Please see Memorandum of Law in Support.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑  No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:


Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:




**GROUND TWO:**

Ineffective Assistance of Trial Counsel

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Trial counsel's failure to:
(1) Convey his trial strategy and inform Chavarin of any affirmative defense;
(2) Prepare for trial and research the applicable law and review the discovery provided by the government;
(3) Subpoena or call any defense witnesses on Chavarin's behalf;
(4) Lodge proper objections; and
(5) Act as an effective advocate for Chavarin at trial deprived Chavarin of effective assistance of trial counsel and a fair and reliable jury verdict.


Please see Memorandum of Law in Support.

**(b) Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

     Claims of ineffective assistance of counsel are not generally raised on direct appeal.

**(c) Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

## GROUND THREE:

Ineffective Assistance of Sentencing Counsel

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Sentencing counsel's failure to:
(1) Review, discuss or explain the Presentence Report ("PSR") to Chavarin;
(2) Object and argue for mitigation of Chavarin's sentence;
(3) Argue that Chavarin's sentence was substantively unreasonable deprived Chavarin effective assistance of sentencing counsel and a fair and just sentence.

Please see Memorandum of Law in Support.

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❏   No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Claims of ineffective assistance of counsel are not generally raised on direct appeal.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❏   No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

　　Yes ❑　　No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

　　Yes ❑　　No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

　　Yes ❑　　No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

**(b)  Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ❑

(2) If you did not raise this issue in your direct appeal, explain why:

**(c)  Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑  No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑  No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

N/A

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ❑   No ☑
    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:
    (a) At preliminary hearing:
       Robert L. Steele, 46 W Broadway, Ste 110, Salt Lake City, UT 84101
    (b) At arraignment and plea:
       Javier Riojas, Texas RioGrande Legal Aid, Inc., P.O. Box 2001, Eagle Pass, TX 78853
    (c) At trial:
       Rudy J. Bautista, 136 E South Temple, Ste 1530, Salt Lake City, UT 84111
    (d) At sentencing:
       Kelly Ann Booth, 215 S State St, Ste 950, Salt Lake City, UT 84111

Page 12

(e) On appeal:

Meredith B. Esser, Districts of Colorado&Wyoming 633 17th St., Suite 1000 Denver, CO 80202

(f) In any post-conviction proceeding:

N/A

(g) On appeal from any ruling against you in a post-conviction proceeding:

N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?      Yes ☐ No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?      Yes ☐ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?   Yes ☐   No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you
    must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not
    bar your motion.*

    N/A

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.
§ 2255, paragraph 6, provides in part that:
    A one-year period of limitation shall apply to a motion under this section.  The limitation period
shall run from the latest of —
        (1) the date on which the judgment of conviction became final;
        (2) the date on which the impediment to making a motion created by governmental action in
violation of the Constitution or laws of the United States is removed, if the movant was
prevented from making such a motion by such governmental action;
        (3) the date on which the right asserted was initially recognized by the Supreme Court, if
that right has been newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review; or
        (4) the date on which the facts supporting the claim or claims presented could have been
discovered through the exercise of due diligence.

Page 13

Therefore, Chavarin respectfully requests that the Court grant the following relief:

Vacate his conviction and sentence to start anew; alternatively, grant an Evidentiary hearing to further prove his grounds set forth above, resolve facts in dispute, expand an incomplete record or any other relief to which this Court deems that he may be entitled.

Respectfully submitted,

_____

ALAN EDUARDO CHAVARIN
REG. NO. 24900-081
FCI SAFFORD
FEDERAL CORR. INSTITUTION
P.O. BOX 9000
SAFFORD, AZ  85548
Appearing *Pro Se*

## DECLARATION OF ALAN EDUARDO CHAVARIN

I, Alan Eduardo Chavarin, declarant herein, declare and attest to the facts in the above and foregoing Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody to be true and correct to the best of my knowledge under the penalty of perjury pursuant to 28 U.S.C. § 1746. I placed this § 2255 Motion in the prison mailbox on the date below invoking the prison mailbox rule. See *Houston v. Lack*, 487 U.S. 266, 270 (1988).

Dated: August 27, 2020.

_____

ALAN EDUARDO CHAVARIN

## IN THE UNITED STATES DISTRICT COURT
## UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| **ALAN EDUARDO CHAVARIN,** | : | **Case: 2:20−cv−00605** |
| | : | **Assigned To : Benson, Dee** |
| **Movant,** | : | **Assign. Date : 8/28/2020** |
| | : | **Description: Chavarin v USA** |
| **v.** | : | **Civil No. 2:20-cv-_____** |
| | : | **Crim No. 2:16-cr-00609-DB-1** |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Respondent.** | : | |

FILED US District Court-UT
AUG 28 '20 PM 03:55

### MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, ALAN EDUARDO CHAVARIN ("Chavarin"), appearing

*pro se*, and in support of this motion would show as follows:

### I. JURISDICTION

Chavarin is timely filing a Motion to Vacate, Set Aside, or Correct a Sentence

by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion")

contemporaneously with this Memorandum of Law. Jurisdiction is vested in this

District Court that presided over and imposed sentence pursuant to Rule 4(a) of the

Rules Governing §2255 Proceedings. See *Liteky v. United States,* 510 U. S. 540, 562

(1994).

## II. <u>STATEMENT OF THE GROUND FOR RELIEF</u>

A.      Whether pretrial counsel's failure to: (1) Communicate with Chavarin and provide information to him that he needed to assess the government's case-in-chief, including discovery and other evidence in order for him to make an informed decision as to whether to proceed to trial or plead guilty; (2) Conduct an adequate and independent pretrial investigation including interviewing any defense or government witnesses on behalf of Chavarin; and (3) Attempt to negotiate a reasonable plea agreement with the government deprived Chavarin of effective assistance of counsel during the pretrial phase of the proceedings.

B.      Whether trial counsel's failure to: (1) Convey his trial strategy and inform Chavarin of any affirmative defense; (2) Prepare for trial and research the applicable law and review the discovery provided by the government; (3) Subpoena or call any defense witnesses on Chavarin's behalf; (4) Lodge proper objections; and (5) Act as an effective advocate for Chavarin at trial deprived Chavarin of effective assistance of trial counsel and a fair and reliable jury verdict.

C.      Whether sentencing counsel's failure to: (1) Review, discuss or explain the Presentence Report ("PSR") to Chavarin; (2) Object and argue for mitigation of Chavarin's sentence; (3) Argue that Chavarin's sentence was substantively unreasonable deprived Chavarin effective assistance of sentencing counsel and a fair and just sentence.

2

## III. STATEMENT OF THE CASE

### A. Procedural Background

On November 30, 2016, a grand jury in United States District Court for the District of Utah, Central Division, returned a one (1) count Indictment charging Chavarin. See Doc. 1.[1] Count 1 charged Chavarin with Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1). *Id.*

On September 19, 2017, a jury trial commenced. See Doc. 50.

On September 22, 2017, the jury returned a guilty verdict as to Count 1 of the Indictment. See Doc. 57.

On January 4, 2018, Chavarin was sentenced to a term of 188 months' imprisonment, 5 years Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 67, 68, 70.

On January 17, 2018, Chavarin filed a Notice of Appeal. See Doc. 71.

On April 20, 2020, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") affirmed Chavarin's judgment. See Doc. 87.

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the District of Utah, Central Division in Criminal No. 2:16-cr-00609-DB-1, which is immediately followed by the Docket Entry Number.

B.     **Statement of the Relevant Facts**

1.     Offense Conduct

On the evening of November 11, 2016, Alan Chavarin was pulled over on I-80 after committing multiple traffic violations. See Doc. 76 at 97-99. Chavarin did not have a driver's license—he told the officer that his license had recently been suspended. *Id.* at 104, 107. Chavarin also did not have the vehicle's registration—he was driving a rented SUV, and he told the officer that his girlfriend in Arizona had rented it. *Id.* at 104-05, 165.

While speaking with Chavarin, the officer noticed a straw on the center console, "lying next to a razor blade." *Id.* at 105. This was suspicious, because razor blades and straws are often associated with drug use. *Id.* When the officer asked Chavarin where he was going, Chavarin responded that he was "going to Cheyenne to visit a couple of friends and a girlfriend." *Id.* at 108. Chavarin said that he had met the friends "rock climbing," and that he planned on being in Cheyenne for only "a couple hours" before turning around and driving home to Arizona. *Id.* at 109, 111. Chavarin said that he did not have a phone number for his friends, but that he was "going to contact them through Facebook." *Id.* at 112.

Chavarin gave the officer consent to search the SUV. *Id.* at 113. As that officer began searching the SUV, Chavarin stood nearby and talked to another officer who

4

had arrived as backup. *Id.* at 149-50. Chavarin told that second officer that he had swallowed a "half a gram of heroin" shortly after being pulled over. *Id.* at 154-56. When the officer asked Chavarin if the officers would find "anything in the vehicle," Chavarin "smiled" and responded, "'um, probably not' and then he chuckled." *Id.* at 153.

The officer who was searching the SUV had his drug dog with him. *Id.* at 97. When he walked the dog around the exterior of the SUV, the dog "appeared interested in a few locations" "but never gave a final indication to odor." Id. at 115. When the dog entered the back of the SUV, it became "excited" but had "difficulty pinpointing the specific source." *Id.* at 117.

The officer noticed fingerprints on the SUV's spare tire, which is often a sign that someone has tampered with it. *Id.* at 118. Using a stethoscope and a density meter, the officer determined that something was inside the tire. *Id.* at 119-20. When he cut it open, he found five vacuum-sealed packages. *Id.* at 120. Chavarin and the packages were then transported to a nearby police field office. *Id.* at 122.

Testing later showed that the packages contained 8.4 pounds of heroin. *Id.* at 125-27. The wholesale value of the heroin would be somewhere between $98,000 and $140,000, and its street value in Salt Lake City would be approximately $350,000. *Id.* at 180-81.

In a post-*Miranda* interview at the field office, Chavarin initially said that he was driving to Cheyenne to visit a girl he had met on Facebook, and that he had planned to meet her at a gas station for a few hours and then immediately drive back home to Phoenix. *Id.* at 162-64.

Chavarin also admitted that he had consumed heroin inside the SUV after being pulled over, but he claimed that he "did not know about" any other drugs in the vehicle. *Id.* at 161-62, 166. Chavarin said that he thought he was being arrested for consuming those drugs. *Id.* at 161.

After the drugs from the spare tire were processed, however, Chavarin learned that he would be booked into jail. *Id.* at 166. At that point, Chavarin suggested that he "wanted a deal to try and get himself out of the situation he was in." *Id.* Chavarin and the officers began "discussing different options" "about what he could potentially do." *Id.* at 130.

During these discussions, Chavarin told the officers that he was not headed to Cheyenne as he had originally claimed—instead, he was actually headed to Kansas City to deliver drugs. *Id.* at 128, 169. He said that he "was working for an organization" that he had purchased heroin from in the past and that he was making this particular drug delivery to "square up his debt with them." *Id.* at 129, 136. Chavarin offered to give officers information about "where the narcotics are coming

from in Arizona" and how they were transported. *Id.* at 129, 168. When asked if he had "ever done this before," Chavarin responded, "[n]ot for them, no." *Id.* at 133.

During these discussions, Chavarin expressed some worry about whether he would be killed if he cooperated with police. *Id.* at 166-68. But he never said that he had been threatened or coerced into transporting these drugs, nor did he express any "fear of the people that he was running these drugs for." *Id.* at 132, 171.

The officers had no independent deal-making authority, so they contacted a federal prosecutor. *Id.* at 139-40. But the deal never materialized, *id.* at 167-69, and Chavarin never gave officers any "specific" information. *Id.* at 148.

### 2.   Trial Proceeding

On September 19, 2017, a jury trial commenced before Judge Dee Benson. See Doc. 50. In its case-in-chief, the United States presented the testimony and evidence detailing how Chavarin was caught driving a rented SUV with 8.4 pounds of heroin hidden inside, as well as how Chavarin subsequently told different stories to officers.

At the outset of his opening statement, defense counsel told the jury that "this is not a case of who did it or how it was done." See Doc. 76 at 91. Defense counsel admitted that "[e]verything that was just told to you happened," that Chavarin was indeed "driving a car from Glendale, Arizona, to Kansas City knowing that there were drugs in it with the intent to give it to another person to distribute." *Id.* at 91.

7

Defense counsel then argued that what mattered was "why he did it." *Id.* at 92. Counsel claimed that Chavarin only agreed to transport the drugs because he was threatened by an enforcer from a drug cartel. *Id.* at 93. Counsel argued that Chavarin should be acquitted because he acted under coercion or duress. *Id.*

Before trial, the United States had objected to Chavarin's request for a coercion instruction. At the close of evidence (and outside the presence of the jury), the district court agreed to give the instruction. But the court commented that Chavarin's testimony had a "lot of generalizations," was "very light on specifics," and had been developed "through a fairly effective use of leading questions" from defense counsel. See Doc. 77 at 253-54. The court also observed that Chavarin's "willingness to cooperate" with officers on the night of the arrest "seem[ed] inconsistent with a gun to the head, figuratively speaking, to his family in Mexico and his fiancée and others." *Id.* at 254.

Despite its reservations, the court instructed the jury that Chavarin's actions would be "justified by duress or coercion" if it found (i) that Chavarin "was under an unlawful and present, imminent and impending threat of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to himself or a family member or others"; (ii) that Chavarin "had no reasonable, legal alternative to violating the law"; and (iii) that "a direct causal relationship could have been

8

reasonably anticipated between engaging in the criminal action and avoiding the threatened harm." See Doc. 76 at 201.

Given that Chavarin had admitted to knowingly transporting drugs, both parties' closing arguments focused on whether the jury should believe Chavarin's testimony that he was acting because of the alleged threats. For example, during the United States' closing, the prosecutor pointed out that "not once in all of the time that Chavarin" was with the officers on the night of the arrest did "he ever say 'I am being forced to do this and I'm scared. I'm worried. Somebody has threatened me.' Not once does he say that." See Doc. 77 at 275. The prosecutor also pointed to the lack of specifics in Chavarin's story. *Id.* at 278.

By contrast, defense counsel claimed that Chavarin had "laid out all of the evidence. We know that that stuff happened. We know that his life and his family's life were in danger. We know that no matter what, he couldn't rely on his family being safe in Mexico." *Id.* at 287. He asked the jury to acquit Chavarin because his "actions were not voluntary." *Id.* at 288.

The jury convicted Chavarin as charged. *Id.* at 299.

### 3.    Presentence Report Calculations and Recommendations

The PSR states the Base Offense Level is 32. Two (2) levels were added for Obstruction of Justice, which results in a Total Offense Level of 34. Chavarin's total

criminal history computation is 4, which puts him at Criminal History Category of III. Based upon a Total Offense Level of 34 and a Criminal History Category of III, the guideline imprisonment range was 188 months to 235 months.

### 4.   Sentencing Proceeding

On January 4, 2018, a Sentencing Hearing was held before Judge Dee Benson. See Doc. 67. At sentencing, the Court granted the United States' request for a "completely justified obstruction of justice addition," and it also rejected the defense request for a coercion-based downward departure. *Id.* Based on Chavarin's Guidelines range, the court imposed a 188-month prison sentence. *Id.* As part of the sentence, the court ordered Chavarin to obtain drug treatment. *Id.* at 18-19. A timely Notice of Appeal was filed on January 17, 2018. See Doc. 71.

### 5.   Appellate Proceeding

On Appeal, Chavarin argues that the court erred by failing to (i) specifically identify the perjurious statements, or (ii) determine that those statements satisfied all of the elements of perjury. On April 20, 2020, the Tenth Circuit, in its Order states that, the District Court properly applied the enhancement to safeguard the integrity of its proceedings and affirmed the judgment of the District Court. See *United States v. Chavarin*, No. 18-4011 (10th Cir. 2020).

## IV. **COGNIZABLE ISSUES UNDER § 2255**

The function of a §2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A petitioner is entitled to an evidentiary hearing if he "alleges facts that, if true,

11

would entitle him to relief." *U.S. v. Weeks*, 653 F.3d 1188 (10th Cir. 2011). "[A] petitioner need only allege – not prove – reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004). However, a district court need not hold a hearing if the allegations are "patently frivolous," "based upon unsupported generalizations," or "affirmatively contradicted by the record." *Holmes*, 876 F.2d at 1553.

A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Aron*, 291 F.3d at 715 n.6. "Under 28 U. S. C. § 2255, unless the motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a §2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a §2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993) (citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Second Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the

13

*Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [Chavarin] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to

14

plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

The familiar two-part test of *Strickland* referenced above has been applied by the U. S. Supreme Court and the Tenth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance in all phases of the proceedings. See *Avery v. Alabama,* 308 U. S. 444 (1940). Defendants can raise ineffective assistance of counsel claims concerning performance before trial [*Kimmelman v. Morrison*, 477 U. S. 365, 371-79; *Williamson v. Ward*, 110 F. 3d 1508 (10th Cir. 1997)], actions in jury selection, [*Strickland,* 466 U.S. at 690;], performance during trial, [*Strickland*, 466 U. S. at 688; *Fisher v. Gibson,* 282 F. 3d 1283 (10th Cir. 2002)], assistance during sentencing [*Strickland*, 466 U. S. at 687; *Glover v. United States,* 531 U. S. 198 (2001); *Anderson v. Sirmons,* 476 F. 3d 1131

(10th Cir. 2007)], and performance on appeal [*Evitts v. Lucey,* 469 U. S. 387, 396 (1985); *Hammon v. Ward,* 466 F. 3d 919 (10th Cir. 2006)].

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *United States v. Lopez,* 100 F.3d 113, 119-121 (10th Cir. 1996); *Roe v. Flores-Ortega,* 120 S. Ct. 1029, 1037 (2000). In a ruling on a motion under § 2255, the court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

Rule 8 of the Rules Governing § 2255 Proceedings states: "If the [§ 2255] motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted... to determine whether an evidentiary hearing is warranted". See *United States v. Barboa,* 777 F.2d 1420 (10th Cir. 1985). In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue. See *Lott v. Trammell,* 705 F.3d 1167 (10th Cir. 2013).

16

Upon granting a §2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255.

## V. DISCUSSION

As a preliminary matter, Chavarin respectfully requests that this Court be mindful that *pro se* pleadings are to be construed liberally. See *Childs v. Miller,* 713 F.3d 1262, 1264 (10th Cir. 2013) (*Pro se* pleadings are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (same); and *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (same).

**A.** **Pretrial Counsel's Failure To: (1) Communicate with Chavarin and Provide Information to Him That He Needed to Assess the Government's Case-in-chief, Including Discovery and Other Evidence in Order for Him to Make an Informed Decision as to Whether to Proceed to Trial or Plead Guilty; (2) Conduct an Adequate and Independent Pretrial Investigation Including Interviewing Any Defense or Government Witnesses on Behalf of Chavarin; and (3) Attempt to Negotiate a Reasonable Plea Agreement with the Government Deprived Chavarin of Effective Assistance of Counsel During the Pretrial Phase of the Proceedings.**

1-2.  Failure to Communicate and Conduct an Adequate and Independent Pretrial Investigation

Chapter 1, Rule 1.4: Communication of the Utah Rules of Professional Conduct states that:

17

(a)    A lawyer shall:

    (1)    promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

    (2)    reasonably consult with the client about the means by which the client's objectives are to be accomplished;

    (3)    keep the client reasonably informed about the status of the matter;

    (4)    promptly comply with reasonable requests for information; and

    (5)    consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client to effectively participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, there was not any reasonable communication from the beginning of his case between Chavarin and his retained attorney, Rudy J. Bautista ("Bautista"), so that he could effectively participate in his defense. Bautista certainly did not meet the standard as set forth above in Rule 1.4 of the Utah Rules of Professional Conduct

18

or any other professional norm for that matter. He failed to reasonably consult with Chavarin about the means to be used to accomplish his objectives other than persuade Chavarin proceed to proceed to trial. Further, there was not any regular communication between Bautista and Chavarin regarding his case. Bautista went to visit Chavarin only once for about 20-30 minutes. Bautista talked to Chavarin's wife a few times and communicated that Chavarin "has a very high chance of winning." The sole strategy was to claim that Chavarin was forced on doing the illegal drug transportation– that he did not want to do it but he had no choice. He had to keep his family safe in the United States and in Mexico. Baustista persuaded Chavarin that there is a "law" that would protect him, should they prove that he was under duress when he committed the illegal drug transportation.

**Note:** Majority of Chavarin's case discussion happened between Bautista and Chavarin's wife– who knows little to nothing about Chavarin's whereabouts on the night when he was pulled over or his deal with the cartel. There was no proper communication at all, only relay or pass along messages. Bautista failed to obtain all the necessary information from Chavarin– only his wife, who might have been missing significant details while relaying messages back and forth.

**Fact:** From the beginning, Bautista told Chavarin's wife that they will go to trial. He convinced the couple that "they had nothing to loose– that for both trial and

guilty plea, Chavarin would be given the same ten (10) years' maximum sentence [which is a lie]. Basically, pleading guilty was never discussed with Chaverin nor his wife. Hence, Chavarin thought "it was not an option." More so, Bautista did not convey any plea offers.

Bautista had a duty to provide sufficient information to Chavarin so that he could participate intelligently in decisions concerning the objectives of his representation and the means by which they would be pursued. Adequacy of communication depends in part on the kind of advice or assistance that is involved. Because he wholly relied on counsels' advice, Chavarin acquiesced to same. Bautista failed to consult and explain the general strategy and prospects of success and the likely result in the sentence he would receive. The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest. Bautista failed to do so. Without this information, he was unable to make an informed decision. As such, he decided to proceed to trial because he was told by Bautista that they had a very high chance of winning and the fact that Chavarin thought pleading guilty was not an option at all. Bautista's representation was deficient because he failed to properly inform Chavarin of the correct relevant circumstances and likely consequences of pleading guilty, as opposed to proceeding to trial, in order to make an informed decision about which course to take.

"Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Frye*, 132 S. Ct. 1401; *Lafler v. Cooper*, 132 S. Ct. at 1376; *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

It is well established that whether a defendant pleads guilty or proceeds to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States*, 397 U.S. 742 (1970).

In this case, without reviewing any evidence or discovery with Chavarin, discussing the relevant circumstances, the strength of the government's case or any other type of strategy, Bautista pushed Chavarin to go to trial based on nothing but his hunch that Chavarin could win his case by playing the "victim" card. However, ultimately Chavarin proceeded to trial and received a 188-month sentence because of the deficient advice given to him by Bautista. What's worse is that Chavarin received a two (2) level enhancement for obstruction of justice– this was due to Bautista's advice that Chavarin should assert that he transported the drugs because of threats, which was deemed as a perjurious statement. Of course, had Chavarin been properly informed that Bautista was not preparing any kind of defense in this case, other than pressing him to play the "victim" role at trial, there is a reasonable probability that he would have opted to plead guilty.

21

The U. S. Supreme Court stated in *Strickland,* criminal defense attorneys owe their clients "a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary," *Strickland,* 466 U.S. at 691. "As a general rule an attorney must investigate a case in order to provide minimally competent professional representation." *Id.* In this case, Bautista who represented Chavarin did neither as the record clearly reflects.

Defense counsel has the obligation to conduct a reasonably substantial, independent investigation. *Campbell v. Reardon,* 780 F.3d 752 (7th Cir. 2015). The U.S. Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Bautista failed to conduct any kind of a reasonable independent pretrial investigation of his case. Bautista failed to research the case law, interview witnesses or investigate the facts of Chavarin's case. There was no independent

22

pretrial investigation to challenge the government's case-in-chief. Bautista did even

exert an effort to meet with Chavarin to discuss his case. Instead, Bautista settled with

the information provided by Chavarin's wife, who barely knows anything about the

instant case. It is well settled in this circuit that a criminal investigation requires

investigators to piece together evidence, often circumstantial and from multiple

sources, to prove a defendant's innocence or guilt. See *Sawyer*, 799 F.2d at 1508

("counsel has a duty to make reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary"(quoting *Strickland*, 466

U.S. at 690-91). Although courts are typically required to show heightened deference

to an attorney's strategic decisions supported by professional judgment, where a

failure to investigate does not reflect sound professional judgment, such deference is

not appropriate. *Id.*

Bautista did not put the government's case to any kind of adversarial test. Had

he done so, there is a reasonable probability that Chavarin would have pleaded guilty

and benefitted with a significantly less harsh sentence. Accordingly, Chavarin's

conviction and sentence should be vacated so that he may plea anew.

3. <u>Failure to Attempt to Negotiate a Favorable Plea Agreement</u>

The Fifth Circuit has observed that providing counsel to assist a defendant in

deciding whether to plead guilty is "'[o]ne of the most precious applications of the

23

Sixth Amendment.'" *United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004) (quoting *Reed v. United States*, 354 F.2d 227,229 (5th Cir. 1965)). When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *Teaque v. Scott*, 60F.3d 1167, 1170 (5th Cir. 1995). Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *United States v. Ridgeway*, 321 F.3d 512, 514 (5th Cir. 2003).

To obtain relief on an ineffective assistance claim, Chavarin ultimately must demonstrate that his attorney's performance was deficient, and that there is a reasonable probability that, but for counsel's deficient performance, he would have pleaded guilty. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given bad advice that caused him to plead guilty instead of

24

proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to a case in which a lawyer was found to have provided ineffective assistance of counsel when the defendant rejected a plea deal and proceeded to trial in the face of overwhelming evidence of guilt and lacking any viable defense. See *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

The U.S. Supreme Court decided *Lafler* and *Frye* in an effort to provide guidance in how *Hill* applies to differing factual settings, and established constitutional standard applicable in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to

25

effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

**Fact:** In this case, there was at no time any discussion of a plea. Chavarin would have considered it had he known the magnitude of the charge and conviction. Bautista made no offer to the government of what Chavarin would accept in a plea offer. Again, the issue of "plea bargain" was never brought up to Chavarin. Chavarin was left with no choice but totally trust his defense attorney and relied entirely on his unilateral opinion and advice.

If not for Bautista's erroneous assessment of Chavarin's inaccurate judgment of records; and incorrect advice, Chavarin would have opted to plead guilty and receive a significantly less harsh sentence, as follows:

| | |
|---|---|
| Base Offense Level | 32 |
| Less: Acceptance of Responsibility (§§ 3E1.1(a) and (b)) | _-3_ |
| Total Offense Level | **29** |
| Criminal History Category | **III** |
| Guideline Imprisonment Range: **108 - 135 months** | |

This present matter is similar to *Lafler* in that Chavarin was misinformed by Bautista of the likely consequences of pleading guilty rather than proceeding to trial. In fact, there is a reasonable probability that Chavarin would have plead guilty had Bautista not affirmatively misadvised him regarding his case that it is highly expected

26

that they will win should Chavarin assert that "he was threatened to do the drug transportation in fear of his life and his family." Chavarin was forced to wholly rely on counsels' advice, and based on that advice, proceeded to trial and netted him a 188-month sentence. Had Chavarin been properly informed by Bautista, he would have had a correct understanding of the facts, law of the case and likely consequences in order to make an intelligent and informed decision of whether to proceed to trial or to plead guilty. "It is the lawyer's duty to ascertain if the plea is available, that it would have lead to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.*

Also, whether a defendant pleads guilty or proceeds to trial, he must be aware of "the relevant circumstances and likely consequences" surrounding the plea. *Brady v. United States*, 397 U.S. 742 (1970).

27

In this case, Bautista failed to correctly familiarize Chavarin with the relevant facts, case law, applicable sentencing guidelines and the relevant circumstance and likely consequences of a conviction in Chavarin's case. He failed to properly advise Chavarin of all these matters, which led him to a 188-month sentence. Had he done so, Bautista could have advised Chavarin of the actual correct options available, and there is a reasonable probability that he would have pled guilty. As such, Chavarin easily meets *Strickland*'s two prong test for ineffective assistance of counsel and relief should be granted in the first instance. Bautista's errors in this case were so blatant and flagrant that the Court can conclude that they resulted from a lack of experience, or neglect rather than an informed professional deliberation. He failed his duty to properly advise Chavarin.

Bautista's advice was not a predication, probability, or an estimate, but rather a lack of communication with Chavarin. In turn, Chavarin had to wholly rely on his erroneous advice. Thus, Chavarin was not fairly apprised of the consequences of his decision to proceed to trial. In other words, Chavarin's reliance on Bautista's significantly flawed advice about the consequences of proceeding to trial rather than pleading guilty violated his due process rights. See *Hill*, 474 U.S. at 56.

Accordingly, Chavarin's conviction and sentence should be vacated for relief in the first instance.

**B.** **Trial Counsel's Failure To: (1) Convey His Trial Strategy and Inform Chavarin of Any Affirmative Defense; (2) Prepare for Trial and Research the Applicable Law and Review the Discovery Provided by the Government; (3) Subpoena Or Call Any Defense Witnesses on Chavarin's Behalf; (4) Lodge Proper Objections; and (5) Act As An Effective Advocate for Chavarin At Trial Deprived Chavarin of Effective Assistance of Trial Counsel and A Fair and Reliable Jury Verdict.**

As discussed above, Bautista failed in several (if not all) areas of Chavarin's defense. Bautista never mentioned any type of investigation that he conducted. There was no witnesses for Chavarin's defense.

In this case, Chavarin was not provided with clear strategy on how his counsel would attack the case. Moreover, Bautista failed to try to get Chavarin a Plea Agreement with the government. Below are some of the failures and/or negligence Bautista committed throughout the case proceedings:

In general, Bautista completely failed to get adequate information from witnesses and Chavarin himself. As a party informed and knowledgeable about his own case, Chavarin could have given significantly more input.

1. *No Evidence of Threat*. Bautista failed to support their defense that Chavarin was being threatened and was in fear of his life and his family's that's why he committed the instant offense. Had he personally discussed matters with Chaverin instead of his wife, he would know the importance of the Police Reports emailed to

29

him (by Chavarin's wife)– report of when "they" (cartel) broke into Chavarin's mother- and father-in-law's home, as well as Chavarin's home. At trial, he did not present the Police Report as evidence that Chavarin was indeed being pressured and threatened.

2. *No Witnesses*. There were no (0) witnesses presented on behalf of Chavarin. Bautista could have called Chavarin's wife and/or family to testify how "they" were threatening Chavarin. However, Bautista refused to take Chavarin's wife to testify on his behalf, he believed that such move could hurt Chavarin more.

3. *Failure to Object*. Bautista never objected to the court's inadequate explanation; rather, Chavarin only argued that "there was no evidence . . . that clearly rebuts the testimony of Mr. Chavarin about his duress and coercion." ROA Vol. III at 113. To that end, Chavarin simply requested that the district court "not [] impose the two-level increase" for obstruction of justice. *Id.* As mentioned above, had Bautista prepared and gathered evidence in support of Chavarin's threat claims, the Court could not claim that there was no evidence.

It is essential to note that Bautista did not prepare Chavarin for trial. More so, Bautista did not know that he was not ready for trial as he only knows less than half of what he needed to know to proceed to trial (information he obtained from Chavarin's wife). Bautista had no trial strategy or material legal defense for Chavarin,

which explains his lack of participation at trial. In essence, Chavarin was stuck without any kind of a defense from his appointed lawyer which netted him a sentence of 188-month imprisonment.

The Sixth Amendment, and a defendant's right to due process, requires "that any person brought to trial in . . . federal court must be afforded the right assistance of counsel before he or she can be validly convicted and punished by imprisonment." *Nichols*, 114 S. Ct. at 1936. (Blackanun, J.,dissenting) (quoting *Baldasar v. 1llinois*, 446 U.S. 222, 227-28 (1980) (*per curiam*).

Accordingly, Chavarin's conviction and sentence should be vacated so that he may plea anew.

**C.** **Sentencing Counsel's Failure To: (1) Review, Discuss Or Explain the PSR to Chavarin; (2) Object and Argue for Mitigation of Chavarin's Sentence; (3) Argue That Chavarin's Sentence Was Substantively Unreasonable Deprived Chavarin Effective Assistance of Sentencing Counsel and A Fair and Just Sentence.**

Prior to sentencing, the PSR was released by the Probation Office. Bautista failed to properly review, discuss and explain the PSR adequately with Chavarin prior to sentencing. As usual, Bautista made no time or effort to see Chavarin. As a matter of fact, Bautista did not even attend Chavarin's sentencing hearing, he had some other attorney fill-in for him– without Chavarin's approval or knowledge.

31

Note that Bautista filed a Sentencing Memorandum on December 8, 2017 [Doc. 64], asking for the Court to vary downward from the otherwise applicable guideline range and sentence Chavarin to 121 months. Specifically, he requested this Court to grant a two-level decrease in offense level for his acceptance of responsibility, and a two-level decrease for coercion and duress. Alternatively, a four-level decrease for his minimal participation in the offense. Bautista also argued that his base level should not be increased because he did not obstruct or impede the administration of justice. Ironically, he asked for a sentence variance in reference to acceptance of responsibility and obstruction of justice, when he did not even mention pleading guilty to Chavarin; and pinned him to proceed to trial without legal strategy or evidence to substantiate their claim that Charavin's offense spawned from coercion and duress.

Accordingly, Chavarin's sentence should be vacated for resentencing.

**Fact:** Bautista felt bad that Chavarin lost trial, and told Chavarin's wife that they don't need to pay their professional fee balance of $1,000 and advised to file for a Petition for Writ of Certiorari to gain relief for inadequate counseling.

## VI. CONCLUSION

For the above and foregoing reasons, Chavarin's conviction and sentence must be vacated so that Chavarin can plea anew. In the alternative, it is respectfully

32

requested that the Court hold an evidentiary hearing so that Chavarin may further

prove his meritorious ground for relief, resolve any disputed facts, and expand an

incomplete record.

Respectfully submitted,

Dated: August 27, 2020.

ALAN EDUARDO CHAVARIN
REG. NO. 24900-081
FCI SAFFORD
FEDERAL CORR. INSTITUTION
P.O. BOX 9000
SAFFORD, AZ  85548
Appearing *Pro Se*

33

ALAN EDUARDO CHAVARIN
REG. NO. 24900-081
FCI SAFFORD
FEDERAL CORR. INSTITUTION
P.O. BOX 9000
SAFFORD, AZ  85548

August 2~~7~~, 2020

Mr. D. Mark Jones
Clerk of Court
U. S. District Court
District of Utah
Central Division
351 S West Temple, Room 1.100
Salt Lake City, UT 84101

      RE:   *Chavarin v. United States*
             Civil No. 2:20-cv-_____
             Crim No. 2:16-cr-00609-DB-1

Dear Mr. Jones:

      Enclosed please find and accept for filing Movant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody and Memorandum of Law in Support thereof. Please submit these documents to the Court.

      Thank you for your assistance in this matter.

                  Sincerely,

                  ALAN EDUARDO CHAVARIN
                  Appearing *Pro Se*

*Encl. as noted*



# PRIORITY MAIL EXPRESS

**UNITED STATES POSTAL SERVICE®**



**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)    PHONE ( )

Lizeth Mena
3832 W. Holly St.
Phx, AZ 85009

**DELIVERY OPTIONS (Customer Use Only)**

☒ SIGNATURE REQUIRED *Note: The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.*

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

TO: (PLEASE PRINT)    PHONE ( )

Mr. D. Mark Jones
Clerk of Court
U.S. District Court
351 S. West Temple Room 1.100
Salt Lake City, UT 84101

ZIP + 4® (U.S. ADDRESSES ONLY)

- For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
- $100.00 insurance included.




⬑ **PEEL FROM THIS CORNER**

LABEL 11-B, MARCH 2019

**EJ 284 633 212 US**

**PAYMENT BY ACCOUNT (if applicable)**
USPS® Corporate Acct. No. | Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**



☒ 1-Day ☐ 2-Day ☐ Military ☐ DPO

PO ZIP Code: 84101
Scheduled Delivery Date (MM/DD/YY): 8/28/20
Postage: $26.35

Date Accepted (MM/DD/YY): 8/27/20
Scheduled Delivery Time: ☐ 10:30 AM ☒ 3:00 PM
Insurance Fee: $
COD Fee: $

Time Accepted: 12:31 ☐ AM ☒ PM
10:30 AM Delivery Fee: $
Return Receipt Fee: $
Live Animal Transportation Fee: $

Special Handling/Fragile: $
Sunday/Holiday Premium Fee: $
Total Postage & Fees: $55

Weight: 5 lbs. ___ ozs.
☒ Flat Rate
Acceptance Employee Initials: B
$26

**DELIVERY (POSTAL SERVICE USE ONLY)**
Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature
Delivery Attempt (MM/DD/YY) | Time ☐ AM ☐ PM | Employee Signature

PSN 7690-02-000-9996

# PRIORITY MAIL EXPRESS

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

P S 10001000006

EP13F Oct 2018
OD: 12 1/2 x 9 1/2




This envelope is made from post-consumer waste. Please recycle again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; October 2018; All rights reserved.

⁎ Money Back Guarantee to U.S., select APO/FPO/DPO, and select International destinations. See DMM and IMM at pe.usps.com for complete details.
† Money Back Guarantee for U.S. destinations only.    ⁎ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.